Patrice Garay versus the Attorney General. Okay, Ms. Lerner. Thank you. Good morning, Your Honors. May it please the Court. My name is Rami Lerner, representing Petitioner Jose Batris. Before dawn on July 13, 2013, Mr. Batris woke to pounding on the door of his home. Seven armed ICE officers busted into the home without a warrant or consent. The next thing Mr. Batris knew . . . I don't know that we have really any evidence that it was without consent because your clients statement about that, it does not seem to me that he would have had personal knowledge because he's in bed. Well, Your Honor, that is the issue in this case. There's a central factual dispute in this case. Mr. Batris aversed that there was no consent and the government, ICE, argues that there was consent or alleges that there was consent. I mean, by his own account, he would not have known whether consent was given or not. He would not have had personal knowledge. Isn't that right? Your Honor, he did not personally observe the ICE officers enter his home without consent, but that is not the same as personal knowledge. At any rate, at this case . . . Whatever he would know would have to be by hearsay, wouldn't it? Well, possibly, it's possible that he could have overheard what was happening and know in that regard, but even if it were hearsay and he had been told by his brother who was at the door at the time, hearsay is admissible in immigration court and always has been. At this stage of proceedings, and this is the agency's error, at this stage of proceedings . . . Well, I thought the board requires to receive an evidentiary hearing on a motion to suppress evidence that an individual must establish a prima facie case with the sworn statement of persons having personal knowledge of the facts. Again, Mr. Baches did have personal knowledge. He had personal . . . personal knowledge is personal information. He had information about how the ICE officers entered his home. The agency was required to take the affidavit that he submitted as true, and if those facts could make out a prima facie case for a Fourth Amendment violation, then he should have been given the opportunity to support his affidavit with testimony, at which point, he could have presented witnesses, the government could have presented their witnesses. All we're asking . . . Do you agree that there's at least a difference of opinion out there among the circuits and other courts with regard to what personal knowledge is, whereas some courts like the one you cited from the Second Circuit believe that personal knowledge consists of more than just what you observe with your own senses, but there are other courts that would require personal knowledge to be based on what you yourself have observed with your own senses? I have not come across any Board of Immigration Appeals or Circuit Court case in the immigration context which required personal observation. Taking it out of the immigration context, are you aware of those cases? Yes, Your Honor, some of them. Again, the immigration context is a little bit different because hearsay is admissible. I want to make sure we don't conflate what is required to get a hearing with what is later going to be admissible in the hearing. Do you understand there could be two different standards involved at the two different steps in the procedure? I do, Your Honor, but this is a very preliminary stage of the proceedings. All that we were asking and all that we're asking here today is that the case go back so that Mr. Baches has an opportunity to have a hearing and make out the prima facie case. As you mentioned, the Second Circuit does have a case directly on point in the immigration context and found that personal observation was not required. The court there found that suppression was warranted in facts that were very similar to the facts here. They found not only that a Fourth Amendment violation occurred, that there was no consent even though neither the petitioner nor his witness had personally observed the ICE officers enter. As I mentioned . . . Here's the problem. I don't see where your client's affidavit, unlike the affidavit in the Second Circuit case, had any facts that would suggest a lack of consent. There's any statement in that affidavit that suggests personal knowledge that would show that there was a lack of consent. Well, the affidavit did say that his brother cracked open the door and that the ICE officers forced their way in without consent. He does have personal knowledge and at that stage of proceedings . . . He would have had to see that, which he could not have. I'm not sure that he would have had to . . . That's different from the banging on the door that he could have heard in the affidavit in the Second Circuit case. He heard banging on the doors in this case, too, and he may have heard a conversation or a lack of conversation that took place when the door opened. He heard them busting in. The affidavit doesn't say anything about that. Again, Your Honor, I would say that . . . The only thing the affidavit says is that he forced his way in, but that's not something he could have seen. Your Honor, as I said previously, even if he obtained that information from his brother, hearsay is admissible in immigration court and there have been cases . . . I don't see where there's any law, though, from the Board that suggests that hearsay can satisfy the personal knowledge requirement for obtaining a hearing. Is there any law to support that? Specifically that, no, Your Honor, but the Board of Immigration Appeals has only rejected or has only not permitted an evidentiary hearing to take place when the lawyer submitted an affidavit only, where the respondent did not submit an affidavit, or where no affidavit was submitted. So the only requirement at this stage, a requirement that Mr. Botris satisfied, was that he submitted an affidavit with personal knowledge about what occurred. Again, personal knowledge means information, and it was defined in the Second Circuit case as information known to the petitioner. Acquired by first-hand observation. I mean, that's the basic definition of personal knowledge, isn't it? Not according to the Second Circuit. I mean, the Second Circuit was quite clear that the fact that the petitioner had not personally observed the ICE officers enter the home, and nor had his witness, the Second Circuit found that that did not mean that he did not have personal knowledge of the facts. And in that case, the Second Circuit decided that the evidence should be suppressed. And I would add, the Second Circuit found an egregious violation of the Fourth Amendment in circumstances very similar to our case, where the ICE officers came to the home before dawn, entered without a warrant or consent, dragged the petitioner into his living room, and interrogated him. In our case, it's even worse, because our client, Mr. Botris, did not give the agent permission to enter his room. And he was forced to submit to an interrogation while he was half-naked in his underwear. If you were to carry the day on your proposition with regard to personal knowledge, is the remedy you seek then a hearing? That's right, Your Honor. We're just asking for a hearing so that Mr. Botris can support his testimony with evidence. We're not saying that the burden now shifts to the government. We just want him to have a hearing so that he can support his motion to suppress. I just wanted to add that we also have Fifth Amendment arguments here, as well as arguments regarding regulatory violations. The agency found that there was no Fifth Amendment violation in this case. But the circumstances show that Mr. Botris' statements could not have been voluntary. The officers created a coercive environment in this case when they busted into the home, armed, and they burst into his bedroom, yelled that he was under arrest, and pulled him half-naked into the living room, did not even give him an opportunity to get dressed, and then interrogated him about his alienage. A reasonable person in that situation would not have felt free not to answer the questions. So we also make the argument that there was a Fifth Amendment violation here. And then finally, there were three regulatory violations. The Board of Immigration Appeals have found that removal proceedings must be terminated, so this is a little bit different from the motion to suppress, that removal proceedings must be terminated when a regulatory violation occurs, provided that the regulation serves a purpose for the benefit of the respondent, and the violation prejudiced the respondent, and both factors apply here. The regulations that were violated, including a regulation requiring a warrant or consent, was also a regulation requiring reasonable suspicion that the person is violating the immigration laws before the officer can seize him. In this case, the government does not... Your time has expired. Okay, thank you, Your Honors. Good morning, Your Honors. Manuel Pelao for the respondent in this case, the Attorney General. This case is about the suppression of evidence in the civil immigration proceeding. The court is obviously conversant with the standards required to get suppression in this context. Here, it's a two-step process with the agency. First, there's a prima facie case stage, then the suppression stage. Here, by affidavit, Mr. Botris was required to put on a case based on his personal knowledge that there was a constitutional violation, and that beyond that, there was egregious conduct sufficient that those two together would call for an evidentiary hearing to back up what he's saying is affidavit. As Judge Pryor noted, his affidavit taken as true confirms that he could not have seen how the entry was... What about heard? I mean, he could have heard it, couldn't he? Yes. I mean, for example, he says, my brother's wife told the officers to be quiet because the children were sleeping. He could have heard that, couldn't he? No, because he says he was asleep in his bedroom. But he said he heard... I mean, so who's the finder of fact on that? This is... Are you? I think his facts is true. He didn't say he heard anything. He said the only thing he said he heard personally was the knocking at the door. That's the last thing he personally observed with his senses. Everything else was out of his sight. Isn't that a hearsay objection? No, it's not. I'm sorry. It's not a hearsay objection? We don't know how he got that information. Well, isn't that a hearsay objection? I mean, you're saying that he doesn't know those by personal knowledge, so that's hearsay. No. What I'm saying, Your Honor, respectfully, is that he's required to put in his affidavit only what he knows for personal knowledge. And his affidavit expressly says, I can testify under penalty of perjury that I have personal knowledge of these facts I'm laying out for you in my affidavit. And he simply does not. Taking his affidavit is true because he was behind closed doors in his bedroom, and in fact, he says he was awakened. Your definition of personal knowledge is it would have to have been first-hand observation, right? Yes, sir. And then hearsay is a statement by an out-of-court declarant introduced to prove the truth of the matter asserted, right? Correct. Those are two different things, right? Correct. And at this phase of the proceedings, hearsay doesn't cut it because if a suppression hearing is granted based on this affidavit, then he cannot testify of his personal knowledge at a suppression hearing as to the circumstances of the entry. The real point here, Your Honor... Was the I-213 hearsay? That's hearsay, isn't it? Yes, but it's an exception to hearsay. It's a government record that's been found to be reliable. So, when there's a conflict between the I-213 and the affidavit, no hearing, you say? Your Honor, I'm saying what the IJ, immigration judge, and the board both noted here is that we're going to discount that part of your affidavit where you relate events that were out of your hearing or your observation because that's not competent evidence of what happened. But how do you know it was out of his hearing? Because I'm taking what he said is true. No, you're taking part of what he said is true. You're saying he was asleep. I don't know. I mean, obviously, he was asleep at 530 when they knocked on the front door. But, I mean, it seems to me that that could have woken him up and then he's recounting what he heard. But, I mean, the fact is nobody ever asked him. Your Honor, this is a motion that he made first verbally and was denied. Then he refiled as a written motion with a supporting affidavit. One supporting affidavit, which was his. He was free to submit affidavits from his sister. Did you submit affidavits from his sister? No, we did not. We have the I-213, which recounts the circumstances of the entry. So the burden is just different on him. Absolutely. He is requesting from the court, it's his burden to show the immigration judge that egregious circumstances took place that were egregious circumstances. Could he have come forward with a new declaration? Could he? I'm sorry, Your Honor. Could he have come forward with a more specific declaration to show that he had some kind of personal knowledge? Absolutely, Your Honor. More to your point, Judge Martin, he said he heard the knocks on the door. He didn't say he heard anything else. He could have easily said, and then I heard my sister say whatever, but he didn't. And both, I think it's telling that both the immigration judge and the board said we find it significant, number one, that you did not personally observe these, but number two, that you have not explained why your brother or sister-in-law didn't provide you with an affidavit at this critical stage of the proceeding because he's got to make his best showing at the prima facie stage that if a hearing is held, that he can prove all these things through testimony. Counsel, that's the purpose for this procedure so that before we gear up the whole mechanism of having a hearing on the motion to suppress, the judge down below has to make sure that if what this affiant says is true, then it would support the relief requested, correct? Precisely. That's a stringent standard because, you know, even if his brother or sister-in-law told him these things, they didn't tell him these things under oath. We don't know if they're willing to say these things under oath. And I don't understand how, even if these things were told to him by his family members, I mean, that's not personal knowledge. If I tell you what I had for dinner last night, that doesn't give you personal knowledge of that. All you know is that I told you that. We look for the penalty of perjury requirement before we gear up for a hearing on the motion to suppress. Exactly, Your Honor, because as the Supreme Court noted in Lopez Mendoza, the immigration system is a streamlined system. If we start handing out suppression hearings based on minimal standards, that's going to bring the system, that's an exaggeration, not to a halt, but it's going to hinder the operation of the system. So it's a high bar that's been set at this point. Civil system, not a criminal. Precisely, Your Honor. This is a civil proceeding, not a criminal proceeding, and that's why Lopez Mendoza did not apply that in the civil context. I would point out, Your Honor, to your point about observation, the Second Circuit case, perhaps I misread it, but I understood that case. That was a suppression hearing, and the error in that case by the agency was that they did not accept Mr. Katsuje, the petitioner's account of the circumstances of the entry because he didn't witness the entry. But what the court said is, what he did tell you, based on his personal observation, is that he saw the front door of his multi-unit building close shut and it was locked. He had a unit within there, and the next thing he knows, they're banging on his door. So that shifted the burden to the government to show that they entered the building lawfully, and they remanded the case for further testimony on that point. They did not find an egregious circumstance. Let me ask you about the scope of the search. Is it your position that once the immigration officers were in the front door, they had free reign to go anywhere in the house they wanted to go? No, ma'am, no. And that's not what happened here. We don't know exactly what happened because in the complete affidavit, what happened here was they led the three occupants of the apartment into the living room and asked them questions. And they were there looking for another individual who used that as his address. They were looking for him. I don't know what the content of the questions were, but I would point out that there was no search here. Did the female officer go in the room with the children? Do you know that? Watch over them, yes. Okay, so how do you know that? Because that's what he put in his affidavit. It's not in the I-213. It's in the affidavit. Okay, so you're accepting that part of the affidavit. I'm not saying it's an egregious circumstance, Your Honor. The court... I mean, but you're accepting parts of the affidavit and not other parts of the affidavit. Isn't that right? Personal knowledge, which is the required level of... I mean, you say he was asleep, so how could he have known where the female officer was? At some point, he woke up. It doesn't matter... So... Do you have an answer for my question aside from Judge Pryor's answer? The board did not rely on that part of his testimony. That doesn't show an egregious circumstance, Your Honor. The board accepted... I'm sorry, the immigration court and the board accepted the parts of his... I don't know that that really answered the question. The question was, how could he have known that the officer had the children? I would submit he couldn't have known. I thought you had said earlier that you accepted that part of the affidavit. I'm sorry. What I meant to say is that it's in the affidavit. Pardon me? It's in the affidavit as opposed to the I-213. All right. What about permission to come into his room or not? I mean... That's... You think that's part and parcel of when they opened the front door and the officers came in? No. Okay, how do you separate that out? From my personal knowledge, the first thing he knows about the ICE officers is when they open his bedroom door. Did he consent to that? There's no evidence that he did, no. Okay. Is there any evidence that the owners of the house consented to that? No, there isn't. I would point to this point. The board made an alternative finding here. To get egregious circumstances sufficient for suppression, you have to show a constitutional violation and surrounding egregious circumstances. A constitutional violation standing alone is not enough in this context to require suppression. And in fact, even a violation which involves the privacy of the home is not sufficient. So here, the board made an alternative finding that even assuming that the officers entered without consent, entered the apartment without consent, that... they look at these other circumstances of the case which were what happened after they got in there. And they found that taking those together as assumed to be true, that did not rise to the level of an egregious circumstance. I'm just curious about how you get there. I think you just agree that they... that entrance into the front door does not equate consent to search the entire house. Are you with me that far? If it's a forced entry, yes. If it's an unconsented entry, yes. No, if it's a consent, if the woman opens the door and the officers walk in the front door, I agree with you that would be consent under Eleventh Circuit law. But I do not agree that that would be consent to search the whole house. Do you disagree with me about that? No, I don't. Okay, so you agree that they didn't... I mean, there's nowhere on this record that we know that the officers got consent to search the entire house. This record does not reflect... That's correct, but there's also no evidence they searched the house at all. Well, they came into the bedroom where he was behind a closed door, didn't they? And they escorted him right to the living room. Okay. By his own testimony, Your Honor. But the burden's on him. Is that right? The burden of lack of consent would have been on him? Correct. And he's not the owner of the premises? I don't know that for a fact, Your Honor. He appears to be living in the premises. He hasn't said that he is the owner of the premises? There's no record information to that effect, no. And the burden's on him to show that there was no consent? There is, and that... It could very well be that the owner of the premises said, you have consent to go through the whole place. That's correct, Your Honor. But not in the record. Correct. And it's his burden. That's my response. At this point, the government has no burden. He's seeking suppression in a civil proceeding. The proceeding that's been set up is that he must convince the immigration court that there were not just a violation of his constitutional rights, but also egregious surrounding circumstances that are sufficiently bad that a suppression hearing is called for to get more testimony on this. What the immigration court and the board is actually saying here is that the evidence he gave in his affidavit, his burden, did not convince them that whether the initial entry was consented to or not, there were egregious circumstances warranting a suppression hearing. Egregious circumstances. What you're saying is the government will give a suppression hearing if the petitioner had established at least a prima facie case of egregious circumstances, even though the Supreme Court hasn't held that there is a suppression right even in that circumstance, right? They've not held that, Your Honor, but the courts who have looked at the decision have gone beyond it and said they haven't excluded that either. Right. But what I'm asking you, I understand some circuits have assumed at least that that can be the case. What I'm asking, though, is that what the immigration courts do, too? Is that they assume that that would satisfy the standard? That's a good question. Yes, that's what they've been following, yes. They've been following the cases that say if you can make out an egregious set of circumstances, then we'll give you a hearing. Exactly. I see. This was pre-Dawn? Yes? Yes, ma'am. Warrantless? Correct. Thank you. Thank you, Your Honor. Well, Mr. Batras did have the burden to make a prima facie case. The standard at the stage of proceedings where his case left off was very low. The burden was low. All he needed to do was submit a sworn affidavit with facts that could make out a basis for a Fourth Amendment violation or for exclusion of the evidence. And that is what he did. He was entitled to a hearing simply so that he could provide evidence, additional evidence and testimony to meet his burden. He does have to have personal knowledge, right? Yes, Your Honor. He does have to have personal knowledge. And they could have reasonably concluded that he didn't. Your Honor, he should have had an opportunity to provide additional testimony. To the government's point that he didn't provide witnesses or other affidavits, he wasn't required to at this stage of proceedings. He's got to give though an affidavit that has enough information of which he has personal knowledge to satisfy their standard. And they concluded he had. Right? He was present and he did personally during the incident and he did personally experience it and did personally observe most of the things that he alleged in the affidavit. But not the consent issue. That's not on the record whether he personally observed. But again, he did not have to personally observe it. The Second Circuit is the only case He had to have personal knowledge of it, right? If I look in Black's Law Dictionary, personal knowledge is defined as having first-hand observation. Your Honor, in Katsoje, the Second Circuit stated, we reject the IJ's determination that Sikidu's failure to personally observe the officer's entry of the home rendered him incapable of establishing a prima facie case for suppression. And this was after he had a hearing. All that we are asking for here is that he have an opportunity to have a hearing and present additional testimony and witnesses to make up the prima facie case. In addition, the record is very clear, the affidavit is very clear that the ICE officers busted into his room without permission. And consent, even if given, would not necessarily have extended to the whole home. It would not necessarily not have either. Isn't that right? Well, again, that was a question for the Court in the hearing then. If there was consent, what would that have extended to? He's got to give enough to establish that he would be able to show that there was a violation. He hasn't said anything about who would have had the authority to grant or not grant consent to come into that room and whether or not that in fact had happened. Your Honor, the Board of Immigration Appeals, the agency in this case, decided that he could not make out a prima facie case simply because he did not observe the ICE officers entering the home. Did it make the decision based on the fact that he couldn't have... Nor did he say anything in the affidavit to suggest that that was my private space, I was renting it out, they would have had to get my permission. There's nothing like that either, and it's his verdict. He alleged that the ICE officers entered without consent. We just went through that portion. Now we're talking about it. You've got a fallback position you want to rely upon that was never asserted in the affidavit, is my point. Isn't that right? No, Your Honor. Why not? I'm sorry, could you repeat the question? Why is that not right? Could you repeat the statement? You've got a fallback position that you want to rely on that was never asserted in the affidavit. You're talking about the scope of the search. I'm talking about whether there was consent to enter the room and whether there was a lack of consent to enter the room. That's really a fallback argument from whether there was consent to enter the premises generally. Well, Your Honor, it was within his knowledge that there was no consent to enter. But we know that they entered the room without his consent. That was in the affidavit. And so it was a question for the Immigration Court whether that was permissible. Okay, Ms. Lerner. We have your case, and we'll move on to the next one. Thank you. Thank you.